IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,

PENNSYLVANIA

| | | |
|---|---|---|
| DIANA FRICK AND JOSEPH FRICK, her husband | ) | CIVIL DIVISION |
| | ) | |
| | ) | No. GD 14-14301 |
| Plaintiffs, | ) | |
| | ) | Issue Number: |
| vs. | ) | |
| | ) | |
| BIG LOTS STORES, INC. | ) | **PLAINTIFF'S COMPLAINT IN CIVIL ACTION** |
| | ) | |
| Defendant | ) | |
| | ) | |
| | ) | Filed on Behalf of Plaintiffs |
| | ) | |
| | ) | |
| | ) | Counsel of Record for this Party: |
| | ) | |
| | ) | MICHAEL C. GEORGE, ESQUIRE |
| | ) | Pa I.D. 43662 |
| | ) | |
| | ) | LAW OFFICE OF MICHAEL C. GEORGE |
| | ) | The Grant Building |
| | ) | 330 Grant Street, Suite 712 |
| | ) | Pittsburgh, PA 15219 |
| | ) | |
| | ) | (412) 566-2299 |
| | ) | |



EXHIBIT
B

## NOTICE TO DEFEND

YOU HAVE BEEN SUED IN COURT. IF YOU WISH TO DEFEND AGAINST THE CLAIMS SET FORTH IN THE FOLLOWING PAGES, YOU MUST TAKE ACTION WITHIN TWENTY (20) DAYS AFTER THIS COMPLAINT AND NOTICE ARE SERVED, BY ENTERING A WRITTEN APPEARANCE PERSONALLY OR BY ATTORNEY AND FILING IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU. YOU ARE WARNED THAT IF YOU FAIL TO DO SO THE CASE MAY PROCEED WITHOUT YOU AND A JUDGMENT MAY BE ENTERED AGAINST YOU BY THE COURT WITHOUT FURTHER NOTICE FOR ANY MONEY CLAIMED IN THE COMPLAINT OR FOR ANY CLAIM OR RELIEF REQUESTED BY THE PLAINTIFF. YOU MAY LOSE MONEY OR PROPERTY OR OTHER RIGHTS IMPORTANT TO YOU.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, THEN YOU SHOULD GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP:

LAWYER REFERRAL SERVICE
ALLEGHENY COUNTY BAR ASSOCIATION
920 CITY-COUNTY BUILDING
PITTSBURGH, PA 15219

TELEPHONE: (412) 261-0518

2

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,

PENNSYLVANIA

| | |
|---|---|
| DIANA FRICK AND JOSEPH FRICK, her husband | ) CIVIL DIVISION |
| | ) |
| | ) No. GD 14-14301 |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| BIG LOTS STORES, INC. | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## PLAINTIFF'S COMPLAINT IN CIVIL ACTION

AND NOW, come the Plaintiffs, Diana Frick and Joseph Frick, her husband, by and through their attorney, MICHAEL C. GEORGE, ESQUIRE, and files this Complaint in Civil Action of which a following is a statement:

## PARTIES

1.      Plaintiffs, DIANA FRICK and JOSEPH FRICK, wife and husband, are adult individuals and reside at 409 Alice Street, Pittsburgh, Allegheny County, Pennsylvania 15210 (hereinafter referred to collectively as "PLAINTIFFS" and/or individually as " PLAINTIFF-WIFE and/or MRS. FRICK and/or PLAINTIFF-HUSBAND and/or MR. FRICK").

3

2.     Defendant, BIG LOTS STORES, INC. (hereinafter refer to as "BIG LOTS") is a foreign corporation operated for the purposes of realizing pecuniary benefit that is organized and existing under the laws of the State of Ohio and has its headquarters and principal place of business in the State of Ohio at 300 Phillipi Road, Columbus, Ohio 43228.

3.     BIG LOTS is a large national retail store chain that sells, *inter alia,* household consumer products to members of the public throughout the United States, the Commonwealth of Pennsylvania and Allegheny County, Pennsylvania. BIG LOTS does business in a systematic and continuous manner throughout the Commonwealth of Pennsylvania and owns, operates and/or maintains approximately 70 stores in the Commonwealth of Pennsylvania and at least five stores in Allegheny County, Pennsylvania. BIG LOTS is publically traded on the New York Stock Exchange and is listed as a Fortune 500 company by Fortune Magazine with reported sales in 2014 exceeding $5 Billion dollars and maintains a market capitalization of over $2 Billion dollars.

## JURISDICTION AND VENUE

4.     This Honorable Court has jurisdiction over this matter pursuant to 42 Pa. C.S. §5322(a) in that BIG LOTS transacts a large volume of business for the purpose of pecuniary benefit in the Commonwealth of Pennsylvania and also ships a large volume of merchandise directly or indirectly into the Commonwealth.

5.     Venue in Allegheny County is proper pursuant to Pennsylvania Rules of Civil Procedure 1006(a)(1) and 2179(a)(2) in that BIG LOTS is a publically traded foreign

4

corporation that regularly conducts business in Allegheny County. Further, the overwhelming portion of relevant events giving rise to the instant action occurred in Allegheny County, Pennsylvania in the form of Plaintiff, MRS. FRICK'S, medical treatment at West Penn Hospital in Pittsburgh.

## A.    FACTUAL BACKGROUND – PRODUCTS AT ISSUE

6.    On or about April 26, 2013, Plaintiff-husband, JOSEPH FRICK, purchased two large mosaic pot table top torches, identified by BIG LOTS as "ITEM #DC 12-21111 (hereinafter referred to as either "mosaic torches", and/or "subject torches" and/or "subject torch") from the BIG LOTS STORE #0801 located at the Downtown Meadville Mall in Meadville, Pennsylvania. The subject torches were purchased for use by both PLAINTIFFS and PLAINTIFFS' family for personal, family and household purposes.

7.    Based upon information and belief, the mosaic torches were designed, in part by BIG LOTS and designed in part and manufactured by Designco, a foreign corporation organized and existing under the laws of the country of India and purchased for resale, labeled, marketed, distributed and sold in the United States and Pennsylvania to members of the public and PLAINTIFFS by Defendant BIG LOTS.

8.    Simultaneous with the purchase of the mosaic table top torches referenced above, MR. FRICK also purchased two 64 ounce containers of a flammable liquid called "citronella torch fuel" (hereinafter referred to as "torch fuel") also sold by BIG LOTS at store #0801 under the brand name "HOMESTAR." The subject torch fuel was specifically purchased for use with the subject torches for personal, family and household purposes.

9. Based upon information and belief, the torch fuel was produced by HOC Industries, Inc., a foreign corporation organized and existing under the laws of the State of Kansas that blends, fills and distributes combustible and flammable liquids under a variety of brand names, including the name "HOMESTAR", to retailers such as Defendant BIG LOTS throughout the United States and Pennsylvania.

10. Although the torch fuel was produced by HOC Industries, Inc., the torch fuel was purchased for resale, labeled, marketed, distributed and sold by Defendant BIG LOTS throughout the United States and Pennsylvania to members of the public, including PLAINTIFFS.

11. At all times relevant to this matter, Defendant BIG LOTS specifically intended that its customers purchase both the subject torches and the torch fuel at the same time for use with the other (hereinafter referred to collectively as "the product" and/or "those products"). To that end, BIG LOTS manifested and executed that intention by adopting and implementing a retail merchandising technique known as a "planogram" for all of its stores whereby BIG LOTS instructed its employees to display the mosaic torches and torch fuel immediately adjacent to one another so as to cause customers to purchase the two items at the same time and to use them together. BIG LOTS instituted this planogram in all of its stores throughout the United States and Pennsylvania, including Store #0801, for its pecuniary benefit.

## B. FACTUAL BACKGROUND – PRODUCT DEFECTS AT ISSUE

### i. Design Defect - Mosaic Torches

12. In June 2012, BIG LOTS requested that Designco manufacture a mosaic

"firepot" and forwarded design specifications for Designco's review. Shortly thereafter, Designco presented several samples for BIG LOTS' review and approval. One of the samples presented to BIG LOTS was ultimately referred to and designated by Designco and BIG LOTS as the "Mosaic Glass Tabletop Torch" and ultimately was labeled as "ITEM #DC12-21111" and is a subject matter of the instant action.

13.     The subject torches were one of those samples reviewed and approved by BIG LOTS.

14.     At the time that BIG LOTS marketed, distributed and sold the subject torches to members of the general public and PLAINTIFFS they were subject to, *inter alia*, the following design defects:

a.     The subject torches did not feature a fitted wick holder assembly to separate the burning flame on the portion of the wick outside of the body of the subject torches from the torch fuel and any vapors within the subject torches. Consequently, the absence of a fitted wick holder assembly permitted and/or greatly increased, *inter alia*, the risk of the following:

i.     easily allowing the introduction of the torch flame inside the body of the torch so as to come into contact with the torch fuel vapors through regular and expected usage such as by moving the lighted torch or by blowing on the torch to extinguish the flame;

ii.     allowing the torch fuel vapors that accumulate inside of the torch to exit the body of the torch in an expeditious fashion through the unfitted wick assembly and to easily come into contact with the flame

through regular and expected usage such as by moving the torch or by blowing out the torch to extinguish the flame.

b.     The subject torches failed to contain or were not supplied with an extinguishing cap or snuffer device so as to allow the torch to be extinguished without the user blowing on it.

c.     The subject torches were designed with inadequate venting so as to prevent the buildup and accumulation of excessive and dangerous amount of fuel vapor within the body of the subject torches.

15.     As a result of the defective design of the subject torches as set forth above, purchasers and users of the subject torches were subject to a substantial risk of catastrophic burn injury or death from an explosion of the subject torches and subsequent conflagration when the torch flame made contact with the torch fuel vapors.

16.     The defects as set forth above, *inter alia*, were not known or knowable by PLAINTIFFS and other customers and rendered the subject torches unreasonably dangerous to the purchasers and ultimate users of the subject torches.

17.     Prior to BIG LOTS introducing and releasing the subject torches into the stream of commerce by marketing, distribution and sale to members of the general public and PLAINTIFFS, the subject torches were not tested for structural integrity, spill and leak hazards, wick assembly construction, venting of vapors or any other real world applications during normal and expected usage of the product.

**ii. Design Defect – Marketing, Distribution and Sale of the Torch Fuel with the Subject Torches**

18.     Prior to BIG LOTS introducing and releasing the subject torches into the stream of commerce by marketing, distribution and sale to members of the general public and PLAINTIFFS, BIG LOTS finalized the labeling of the torches. However, the final labeling was deceptive, confusing and contradictory. The labeling interchanged the terms "oil" and "fuel"-- which are two different liquids with different properties and flashpoints.[1] The label informs the user, "fill oil lamp with *citronella* oil only (emphasis added). Never use gasoline, Kerosene or other flammable *fuel*." Nevertheless, another portion of the labeling instructs the user to "check that there is no *torch fuel* on the body of the oil lamp or on your hands." (emphasis added) "Do not fill the *torch fuel* more than 1200ml otherwise fuel may overflow from the lamp" (emphasis added). Thus, BIG LOTS labeling of the mosaic torches was deceptive, confusing and contradictory, expressly and/or impliedly, in that it misrepresented that torch fuel was a safe fuel to use with the subject torches when it was not.

19.     At no time prior to distribution of the torches by BIG LOTS to the general public and PLAINTIFFS were the torches tested with the "HOMESTAR" torch fuel that BIG LOTS intended to sell the torches with.

20.     As produced, the torch fuel marketed, distributed and sold by BIG LOTS to members of the general public and PLAINTIFFS had a flashpoint at or near 100°F, which

---

[1] The flash point of a volatile material is the lowest temperature at which it can vaporize to form an ignitable mixture in air. Consequently, the vapor will burn so long as a source of ignition is present. The flashpoint of torch fuel is much lower than the flashpoint of traditional citronella oil and the vapor pressure and the explosive power of torch fuel is much greater than that of traditional citronella oil by chemical properties. Torch fuel is much more similar to kerosene in chemical composition then it is to traditional citronella oil.

is substantially lower than traditional citronella oil, which typically has a flashpoint between 141°F and 200°F. Consequently, the subject torch fuel's much lower flashpoint produced significantly increased vapor pressure within the body of the subject torches and thus dramatically increased the explosive power of the torch fuel when and if ignited as compared to traditional citronella oil.

21.     BIG LOTS intention and executed plan that its customers purchase and use the torch fuel with the subject torches represented a design defect. The use of the torch fuel with the subject torches presented a substantial risk of catastrophic burn injury or death to any purchaser or user of both products together as a result of explosion and conflagration through normal and customary usage of both products together. The defective design of the torches easily allowed an ignition source (the flame from the lighted wick) to come into contact with the torch fuel vapors due to the absence of a fitted wick-holder assembly and thus represented a substantial risk of catastrophic burn injury or death, even with the use of traditional citronella oil.

22.     However, the use of the subject torch fuel with the subject torches dramatically increased the risk of catastrophic burn injury or death to the purchaser or user as a consequence of the lower flash point, increased vapor pressure and increased explosive power of the torch fuel as compared with traditional citronella oil.

23.     The design defects as set forth above, *inter alia*, were not known or knowable to PLAINTIFFS and other customers and rendered the subject torch fuel unreasonably dangerous to the purchasers and ultimate user of the subject torch fuel, especially when used in conjunction with the subject torches. However, the defective and unreasonably dangerous nature of the subject torch and torch fuel was well known to BIG

10

LOTS at and prior to the time that MR. FRICK purchased these products on April 26, 2013.

### iii. Inadequate Labeling and Warnings Defect – Subject Torches and Torch Fuel

24.    At no time prior to BIG LOTS introducing and releasing the subject torches and torch fuel into the stream of commerce by marketing, distribution and sale to the members of the general public and PLAINTIFFS were the labels and/or warnings on the torches and torch fuel bottles reviewed for adequacy.

25.    The label of the torch fuel bottle specifically indicated that it was intended for use with outdoor torches and BIG LOTS specifically manifested and executed its intention that the torch fuel be purchased and used with the subject torches through its marketing "planogram" as set forth, *supra*.

26.    The labeling and warnings set forth on the subject torches and torch fuel bottle were inadequate and defective.  Those defects included, *inter alia*, the following:

a.    The labeling and the warnings were defective for failing to clearly and unambiguously advise customers and PLAINTIFFS to not purchase and use the torch fuel with the subject torches;

b.    The labeling contained no warning not to blow on the wick of the subject torch to extinguish it;

c.    The labeling contained no warning that fuel with the flashpoint below 141°F should not be used with the subject torches;

11

d.      The labeling was deceptive, confusing and inconsistent in that it used the terms "citronella oil" and "torch fuel" interchangeably when only citronella oil should have been used to decrease the risk of burn injury and death from explosion and conflagration.

27.      The lack of adequate labeling and warnings on the subject torches and torch fuel bottles were not known or knowable to PLAINTIFFS and other customers and rendered those products unreasonably dangerous at the time they were released into the stream of commerce by BIG LOTS by the marketing, distribution and sale of the products to members of the general public and PLAINTIFFS. However, the defective and unreasonably dangerous nature of the subject torch and torch fuel were well known to BIG LOTS at and prior to the time that MR. FRICK purchased these products on April 26, 2013.

## C.      FACTUAL BACKGROUND – BIG LOTS CUSTOMER LOYALTY REWARDS CARD PROGRAM

28.      At all times relevant to this matter, Defendant BIG LOTS developed and implemented a Customer Relations Management (CRM) computer/data software platform for managing its interactions with current and future customers. BIG LOTS' CRM platform involved the use of technology to organize, automate and synchronize sales, marketing, customer service and technical support. At all times relevant to this matter, Defendant BIG LOTS invested millions of dollars and countless man-hours in the development and implementation of its CRM platform.

29.    One facet of BIG LOTS CRM platform involved the use of a customer loyalty rewards club program. At all times relevant to this matter, BIG LOTS promoted a customer loyalty rewards club program that it calls "BUZZ CLUB REWARDS" as a benefit to itself and to its consumers and collects purchase information at the point of sale from all of its customers that participate in the "BUZZ CLUB REWARDS" program. Specifically, through the "BUZZ CLUB REWARDS" program, BIG LOTS encourages and entices customers to return to BIG LOTS stores through special promotions, pricing and benefits.

30.    Consumers join the BUZZ CLUB REWARDS program by completing an application in the store or online. The application asks for the consumer's name, address, telephone number and email address. Defendant BIG LOTS stores this contact information in a centralized database and monitors and records customers' subsequent purchases made using the BUZZ CLUB REWARDS card.

31.    At the cash register, customers or cashiers enter the BUZZ CLUB REWARDS card information. Defendant BIG LOTS thereby captures each customers' purchasing history.

32.    BIG LOTS requires customers to use the BUZZ CLUB REWARDS card to receive discounted prices on their purchases thus insuring a high level of compliance by customers, including PLAINTIFFS.

33.    BIG LOTS analyzes the recorded information and uses it to provide customers with special offers, promotion and other benefits tailored to each customers purchasing habits. These special offers, promotions and other benefits are instrumental in making BUZZ CLUB REWARD card members repeat customers including PLAINTIFFS.

34. The "BUZZ CLUB REWARDS" program as part of BIG LOTS CRM platform, enables BIG LOTS to quickly and easily determine what products "BUZZ CLUB REWARDS" members have purchased from BIG LOTS inventory. Indeed, BIG LOTS can determine this data quickly and efficiently in the mere stroke(s) of a computer keypad. Further, BIG LOTS BUZZ CLUB REWARDS program privacy policy sets forth, *inter alia*, that BIG LOTS will use customer purchasing data in order to "contact the customer when necessary" and to also address "problems with product and services."

35. Through the database collected and maintained by BIG LOTS via the BUZZ CLUB REWARDS card program, BIG LOTS can easily and quickly identify which BUZZ CLUB REWARDS remembers purchased any specific product including, *inter alia*, recalled products and/or products removed from store shelves, and timely warn the customers that further use of the recalled or removed product puts them at risk of serious injury or death. Via the BUZZ CLUB REWARDS card program, BIG LOTS can also easily credit customers for the cost of the product if it was purchased with a credit or debit card.

36. Given the significant expenditure of time and money in the development of the CRS platform by BIG LOTS in the 21st Century, including in 2013, the most convenient, logical, efficient, least expensive and most timely point of contact for BIG LOTS communication of recalled products and products removed from the shelves purchased by BUZZ CLUB REWARDS members is with the member-customers themselves directly through analog and digital media (i.e., telephone landline, cellular phone, email, texting, etc.) contact information stored and maintained in the BIG LOTS CRM database.

14

37.    On April 26, 2013, when PLAINTIFF'S purchased the previously referenced mosaic torches and torch fuel, they purchased those items using a debit card and their BUZZ CLUB REWARDS card.  This fact is evidenced on the BIG LOTS purchase receipt which clearly identifies PLAINTIFFS BUZZ CLUB REWARDS card account number on the receipt.

### D.    FACTUAL BACKGROUND – BIG LOTS KNOWLEDGE OF  PRODUCT DEFECT BEFORE SALE TO PLAINTIFFS AND BIG LOTS FAILURE TO NOTIFY AND WARN

38.    Beginning sometime in early 2013, BIG LOTS released the subject torches and torch fuel into the stream of commerce by marketing, distributing and selling those to members of the general public in its stores throughout the United states and Pennsylvania.

39.    After release of the subject torches and torch fuel into the stream of commerce, BIG LOTS quickly became aware of explosion and fire incidents involving personal injury and property damage from customer usage of the products.

40.    By its own admission filed of record in another legal proceeding arising from an explosion and fire through the use of the subject torches and torch fuel, BIG LOTS has admitted that it was first notified of an incident that involved the subject torches and torch fuel on March 25, 2013, 32 days before Plaintiffs' purchased the subject torches and torch fuel and 55 days before the explosion and fire injuries sustained by Plaintiffs.

41.    After releasing the subject torches and torch fuel into the stream of commerce, BIG LOTS was notified of over 20 other similar incidents (hereinafter "OSI's")

15

involving explosions, fires, and property damage and/or physical injury through the regular, customary and expected usage of the products.

42.    Multiple lawsuits have been filed from the OSI's where the mechanism of injury was substantially similar if not identical to the circumstances of PLAINTIFFS' burn injuries.

43.    Specifically, BIG LOTS is a party Defendant in, *inter alia*, the following actions:


a.    *Chappell vs. Big Lots Stores, Inc.*, filed in the United States District Court for the Western District of Pennsylvania at Case No. 2:13-cv-01210 (explosion and fire injuries occurred when Plaintiff "attempted to extinguish the flame [on the subject torches] by blowing on the wick." Case settled.);

b.    *Lacovara, et vir. vs. Big Lots Stores, Inc.*, filed in the United States District Court for the District of New Jersey at Case No. 1:14-cv-01953 (Plaintiff was "attempting to blow out citronella table top torch when the torch exploded causing her second and third degree burns on her face, neck and right hand." Case pending.);

c.    *Shrum, a minor, vs. Big Lots Stores, Inc., et al.*, filed in the United States District Court for the Central District of Illinois/Springfield Division at Case No. 3:14-cv-03135 (minor Plaintiff "attempted to extinguish [the subject torch] by blowing on the wick"...when, "suddenly and without warning, the flame flared and the torch exploded covering minor Plaintiff with burning torch fuel". Case pending);

d.    *Carvajal Estate vs. Big Lots Stores, Inc., et al.*, filed in the United States District Court for the Western District of Texas/San Antonio Division at Case No.

5:13-cv-00504 (Plaintiff's decedent attempted to move the lighted torch when "suddenly and without warning, [it] exploded, covering [Plaintiff's decedent's] entire body in highly flammable fuel." Plaintiff's decedent received third degree burns covering more than 65% of his body and subsequently died from these burn injuries from regular and customary usage of the subject torches and subject torch fuel. Case pending).

        e.      *Pette vs. Big Lots Stores, Inc., et al.*, filed in the Superior Court of California, County of Los Angeles at Case No. BC527719 (Plaintiff sustained burn injuries when using subject torch, "at which time it malfunctioned and exploded....." Case settled).

44.     After March 25, 2013, BIG LOTS received more reports of personal injury, death and property damage due to explosions and fires from regular, customary and expected usage of the subject torches and torch fuel. Nevertheless, in spite of this affirmative knowledge, BIG LOTS took no action as of April 26, 2013, to protect and/or warn and/or notify its customers and members of the general public, including PLAINTIFFS, as to the unreasonable danger then and there existing through the purchase and regular, customary and expected usage of the subject torches and torch fuel.

45.     On April 26, 2013, Plaintiff, MR. FRICK purchased the subject torches and torch fuel as set forth above, *supra*. At the time MR. FRICK purchased the products, BIG LOTS had known for some time that those products were defective and unreasonably dangerous and subjected MR. FRICK, his family and other members of the general public to a substantial risk of serious burn injury or death through the regular, customary and expected usage of those products.

17

46.     The failure of BIG LOTS to take any action on or before April 26, 2013, to protect and/or warn and/or notify PLAINTIFFS, other customers and members of the general public from the known defective and unreasonably dangerous products constituted outrageous behavior and/or reckless indifference to the rights and safety of PLAINTIFFS, their family, other BIG LOTS customers and members of the general public.

47.     On April 30, 2013, four days after the purchase of the subject torches and torch fuel by MR. FRICK, BIG LOTS finally took some action and issued a "pull and hold" order marked as "critical" to all of its stores informing them to "immediately pull from the sales floor and hold without further notice" the subject torches.  Nevertheless, while this action conceivably acted to protect potential future customers from burn injury or death from these products, BIG LOTS took no action to protect and/or warn and/or notify customers who had already purchased the products including, PLAINTIFFS and other BUZZ CLUB REWARDS members and members of the general public of the substantial risk of burn injury or death from continued use of these defective and unreasonably dangerous products.

48.     After issuing the "critical" order to remove all of the subject torches from its stores, BIG LOTS continued to receive additional reports of serious personal injury and property damage from explosions and fire incidents from the subject torches and torch fuel.  Moreover, BIG LOTS continued to manifest knowledge and acute awareness of the defective and unreasonably dangerous nature of the products by communicating with the United States Consumer Products Safety Commission (CPSC)[2].  Specifically, on or about May 15, 2013, four days before the subject explosion that harmed PLAINTIFFS,  BIG

LOTS, through counsel, communicated with a representative of the Defect Investigations Division of the CPSC regarding the defective and unreasonably dangerous nature of the subject torches and torch fuel.

49.     Nevertheless, as of May 19, 2013, the date of PLAINTIFFS'' injuries, and in spite of explicit knowledge and acute awareness of the defective and unreasonably dangerous nature of the subject torches and torch fuel, BIG LOTS continued to fail to take any action to protect and/or warn and/or notify customers who had already purchased the products including, PLAINTIFFS, other BUZZ CLUB REWARDS members, other customers and the general public of the substantial risk of burn injury and/or death from continued regular, customary and expected usage of the products.

50.     From the time it was first notified of an incident involving the subject torches and torch fuel on or about March 25, 2013, and continuing unabated through May 19, 2013, BIG LOTS possessed the capability to easily, conveniently, logically, efficiently, inexpensively and timely contact PLAINTIFFS and other BUZZ CLUB REWARDS members who had purchased the subject torches and torch fuel, to inform and warn them, through and with the contact data maintained and stored in the BIG LOTS BUZZ CLUB REWARDS CRM platform, of the defective and unreasonably dangerous nature of those products before any harm occurred.

51.     The failure of BIG LOTS to take any action to protect and/or warn and/or notify PLAINTIFFS and other BUZZ CLUB REWARDS members who had purchased  the subject torches and torch fuel of the defective and unreasonably dangerous nature of those products in spite of BIG LOTS' knowledge and capability to easily, conveniently,

---

[2] The CPSC is an independent agency of the United States Government charged with protecting the public from unreasonable risks of injury or death associated with the use of thousands of types of consumer

logically, efficiently, inexpensively and timely contact PLAINTIFFS and other BUZZ CLUB

REWARDS members constituted outrageous behavior and/or reckless indifference to the

rights and safety of PLAINTIFFS, PLAINTIFFS' family, other BUZZ CLUB REWARDS

members, other customers and other members of the general public on the part of BIG

LOTS.

### E.    FACTUAL BACKGROUND – THE EXPLOSION AND FIRE INJURIES
### SUSTAINED BY PLAINTIFFS.

52.    On or about May 19, 2013, PLAINTIFFS were using the subject torches and

torch fuel in a regular, customary and expected manner. When MRS. FRICK attempted to

extinguish one of the subject torches by blowing it out in a regular, customary and

expected fashion, the torch exploded and MRS. FRICK was engulfed by a torrent of fire

mediated by the dense spray of ignited torch fuel. Additionally, the furniture and other

property of PLAINTIFFS in the vicinity was also on fire from the explosion.

53.    MR. FRICK heard the horrifying screams of his wife and saw that MRS.

FRICK was engulfed in a conflagration. As a result, MR. FRICK attempted to help

extinguish the flames that had engulfed his wife. This proved to be extremely difficult due

to the torch fuel having penetrated the fibers of MRS. FRICK's clothing, providing

significant resistance to extinguishing the flames. MR. FRICK was forced to use his bare

hands to extinguish the flames and in the process sustained burn injuries of his own.

54.    Once the fire was extinguished, MRS. FRICK was attended to by

emergency medical personnel. It was quickly determined that due to the seriousness of

her burn injuries, she needed to be transferred to a medical center with a specialty burn

products in the United States

unit. Consequently, MRS. FRICK was transported to West Penn Hospital in Pittsburgh and was admitted to the burn unit there.

55.     MRS. FRICK was admitted to West Penn Hospital in Pittsburgh on May 19, 2013, and remained an inpatient there until June 4, 2013. At time of discharge, she was diagnosed as having sustained second and third degree burns over 25% of her total body surface area including her face, neck, chest, bilateral upper extremities and bilateral lower extremities. As a result of her severe burn injuries, she was required to undergo multiple surgical procedures including debridements and skin grafts. Unfortunately, as a result of her severe, continuing and permanent burn injuries, she has been permanently scarred and horribly disfigured and now suffers and shall continue to suffer from the sequelae of severe burn injuries for the rest of her life.

### F. APPLICABLE PRINCIPLES OF LAW – STRICT PRODUCT LIABILITY

56.     As a marketer, distributor and seller of the subject torches and torch fuel, BIG LOTS, under applicable Pennsylvania law, operated under the following legal duties and obligations to PLAINTIFFS, its customers and other members of the general public:

a.     BIG LOTS is subject to liability for the injuries caused to the PLAINTIFFS by a defect(s) in the subject torches and torch fuel which existed when those products were purchased by PLAINTIFFS and left the possession of BIG LOTS. BIG LOTS is subject to liability for PLAINTIFFS injuries even if BIG LOTS had exercised all possible care in the preparation and the sale of the subject torches and torch fuel.

b.     BIG LOTS was the guarantor the subject torches and torch fuel safety. Under Pennsylvania law, it was BIG LOTS duty to provide those products with

every element necessary to make those products safe for use and without any condition that makes those products unsafe for use.

        c.      Any seller of a product, such as BIG LOTS, who puts a defective product into the stream of commerce cannot look to others to relieve it from the responsibility of its act. BIG LOTS duty to provide a non-defective product is non-delegable.

        d.      A seller who makes a misrepresentation of a material fact concerning the character or quality of a product sold by it is liable for all physical harm resulting from another person's reliance on the misrepresentation. A misrepresentation is any assertion which is not true. An assertion may be by words or by conduct.

        e.      Prior to the time of sale to PLAINTIFFS on April 26, 2013, BIG LOTS was required to provide such warnings and instructions as necessary to adequately inform PLAINTIFFS and other users or consumers of the known possible risks of using the subject torches and torch fuel or which are created by the inheritant limitations and the safety of such use. If BIG LOTS failed to provide such warnings or instructions, BIG LOTS is liable for all harm caused thereby.

        f.      After the sale of the subject torches and torch fuel to PLAINTIFFS on April 26, 2013, and continuing unabated until the explosion, fire and burn injuries to PLAINTIFFS on May 19, 2013, BIG LOTS, operated under the continuing duty and obligation to provide such warnings and instructions as are required to inform PLAINTIFFS and other users or consumers of those products of the possible risks of using those products that BIG LOTS was aware and knowledgeable of at time of sale. Thus, even after the sale of the subject torches and torch fuel to PLAINTIFFS, BIG LOTS operated

under the continuing duty and obligation to warn and inform PLAINTIFFS of those known defects. If BIG LOTS failed to provide such warnings or instructions, BIG LOTS is liable for all harm caused thereby.

g.    After the sale of the subject torches and torch fuel to PLAINTIFFS on April 26, 2013, BIG LOTS, operated under the duty and obligation to warn and notify PLANTIFFS and other users or consumers of those products of any additional possible risk that BIG LOTS becomes aware of after the sale and must make reasonable attempts to warn and notify PLAINTIFFS and other users and consumers of any latent product defects through convenient and logical point(s) of contact. If BIG LOTS failed to provide such post-sale warnings or instructions, BIG LOTS is liable for all harm caused thereby.

## COUNT I –

## STRICT PRODUCTS LIABILITY UNDER §402(a) OF THE RESTATEMENT (SECOND) OF TORTS – DESIGN DEFECT – CONSUMER EXPECTATION TEST[3]

### DIANA FRICK AND JOSEPH FRICK VS. BIG LOTS STORES, INC.

57.    Paragraphs 1 through 56 are incorporated by reference as though more fully set forth at length herein.

58.    As set forth above, on or about April 26, 2013, BIG LOTS sold two of the subject torches and torch fuel to PLAINTIFF, JOSEPH FRICK, for use by MR. FRICK'S family, including his wife, DIANA FRICK.

59.    On or about May 19, 2013, in the course of regular, customary and expected usage of the subject torches and torch fuel, PLAINTIFF, DIANA FRICK, attempted to extinguish one of the subject torches by blowing it out. At that point, the subject torch

exploded and engulfed MRS. FRICK in a conflagration from a torrent of ignited torch fuel. In an effort to assist his wife in extinguishing the flames that engulfed her, MR. FRICK sustained burn injuries himself on, *inter alia*, his hands.

60.     The subject torches and torch fuel, as ordinary consumer products, allow ordinary consumers, including both PLAINTIFFS to form minimum safety expectations as a matter of law and fact.

61.     In light of the facts and circumstances surrounding the explosion of the subject torch and subsequent conflagration, the subject torches and torch fuel did not perform as safely as ordinary consumers, including PLAINTIFFS, would have expected it to perform when used, or misused, in an intended or reasonably foreseeable way;

62.     As a direct and proximate result of the failure of the subject torch and torch fuel to perform safely, PLAINTIFF, DIANA FRICK, sustained the following injuries, all of which are, or may be, of a permanent nature:

> a.     Severe second and third degree burns over 25% of her total body surface including her face, neck, chest, bilateral upper extremities and bilateral lower extremities with horrible scarring;
>
> b.     Acute respiratory failure;
>
> c.     Post severe second and third degree burn neuropathy and its sequelae;
>
> d.     Loss of use of skin function, including, *inter alia,* permanent skin barrier dysfunction and deficiency leading to multiple skin infections and inability to wear her normal and customary clothing pre-injury;

---

[3] As pronounced by the Pennsylvania Supreme Court in the recent opinion of *Tincher vs. Omega Flex*, 104, A.3d 328 (Pa., 2014)

e.     Extreme skin sensitivity to change in temperature;

f.     Inability to engage in many of her pre-burn injury normal and customary activities of daily living;

g.     Other severe, continuing and permanent injuries.


63.     As a direct and proximate result of the aforesaid injuries, PLAINTIFF, DIANA FRICK, has sustained and thus claims the following damages from the Defendant, BIG LOTS., all of which are, or may be, of a permanent nature:

a.     She has suffered and will continue to suffer great pain, suffering, inconvenience, embarrassment, humiliation and mental anguish;

b.     She has been, and will continue to be, required to expend large sums of money for surgical and medical attention, hospitalization, medical supplies, surgical appliances, medicines, rehabilitative and attendant services, the total sum of which to-date exceeds $200,000.00;

c.     Her general health, strength and vitality have been greatly impaired;

d.     She has been unable to enjoy the ordinary pleasures of life;

e.     As a result of her injuries, MRS. FRICK, may have sustained a permanent diminution of the ability to enjoy life and life's pleasures;

f.     She has been permanently and horribly disfigured;

g.     She has sustained damages to personal property.

64.     As a direct and proximate result of the failure of the subject torch and torch fuel to perform safely, PLAINTIFF, JOSEPH FRICK, sustained the following injuries, all of which are, or may be, of a permanent nature:

        a.      First and second degree burns of the hands and upper extremities when attempting to extinguish the fire that had consumed MRS FRICK;

65.      As a direct and proximate result of the aforesaid injuries, PLAINTIFF, JOSEPH FRICK, has sustained and thus claims the following damages from the Defendant, BIG LOTS STORES, INC., all of which are, or may be, of a permanent nature:

        a.      He has suffered and will continue to suffer great pain, suffering, inconvenience, embarrassment, humiliation and mental anguish;

        b.      He has been, and will continue to be, required to expend large sums of money for surgical and medical attention, hospitalization, medical supplies, surgical appliances, medicines, rehabilitative and attendant services;

        c.      His general health, strength and vitality have been greatly impaired;

        d.      He has been unable to enjoy the ordinary pleasures of life;

        e.      As a result of his injuries, MR. FRICK, may have sustained a permanent diminution of the ability to enjoy life and life's pleasures;

        f.      He has been disfigured;

        g.      He has sustained damage to personal property.

WHEREFORE, based upon the foregoing, PLAINTIFF, DIANA FRICK, claims damages against Defendant, BIG LOTS, for a sum in excess of $35,000.00 plus punitive damages, interest and costs of suit. Further, PLAINTIFF, JOSEPH FRICK, claims damages against Defendant, BIG LOTS, for a sum in excess of $35,000.00 plus punitive damages, interest and costs of suit.

**JURY TRIAL DEMANDED**

## STRICT PRODUCTS LIABILITY UNDER §402(a) OF THE RESTATEMENT (SECOND) OF TORTS – DESIGN DEFECT – RISK/BENEFIT TEST[4]

### DIANA FRICK AND JOSEPH FRICK VS. BIG LOTS STORES, INC.

66.     Paragraphs 1 through 65 are incorporated by reference as though more fully set forth at length herein.

67.     BIG LOTS, participated in the design of and was the marketer, distributor and seller of the subject torches and torch fuel to JOSEPH FRICK on or about April 26, 2013.  DIANA FRICK, when using the subject torches and torch fuel in a lawful, regular, customary and expected manner on May 19, 2013, sustained horrible and disfiguring and severe burn injuries when the subject torch exploded.  JOSEPH FRICK also sustained severe burn injuries when he assisted in extinguishing the fire that had engulfed his wife.

68.     As set forth in this complaint, *supra*, the design(s) of the subject torches and/or torch fuel was defective and was a direct and proximate cause of PLAINTIFFS' injuries;

69.     At the time BIG LOTS sold the subject torches and torch fuel to MR. FRICK on or about April 26, 2013, BIG LOTS was aware of the feasibility of an alternative safer design(s) at the time the subject torches and torch fuel were manufactured/produced.  BIG LOTS was also aware that a safer alternative design(s) was cost effective and presented no material disadvantage to it.  Indeed, prior to the design, marketing, distributing and sale of the subject torch and torch fuel, BIG LOTS had previously participated in the design of

---

[4] As pronounced by the Pennsylvania Supreme Court in the recent opinion of *Tincher vs. Omega Flex*, 104, A.3d 328 (Pa., 2014)

and had previously marketed, distributed and sold table top torches that incorporated an alternative safer design(s);

70.     The gravity and likelihood of customers, like PLAINTIFFS, being severely and permanently harmed from the use of subject torches and torch fuel in a lawful, regular, customary and expected fashion far exceeded any possible benefit of the design and manufacture of the subject torch and torch fuel as sold to PLAINTIFFS and other customers.

71.     As a direct and proximate result of the design defects inherent in the subject torches and torch fuel, DIANA FRICK, has sustained the injuries and damages set forth in paragraphs 62 and 63 of the Compliant, *supra*, and JOSEPH FRICK has sustained the injuries and damages set forth in Paragraphs 64-65, *supra*.

WHEREFORE, based upon the foregoing, PLAINTIFF, DIANA FRICK, claims damages against Defendant, BIG LOTS, for a sum in excess of $35,000.00 plus punitive damages, interest and costs of suit. Further, PLAINTIFF, JOSEPH FRICK, claims damages against Defendant, BIG LOTS, for a sum in excess of $35,000.00 plus punitive damages, interest and costs of suit.

**JURY TRIAL DEMANDED**

## COUNT III

### STRICT PRODUCTS LIABILITY UNDER §402(b) OF THE RESTATEMENT (SECOND) OF TORTS - MISREPRESENTATION OF SELLER TO CONSUMER

### DIANA FRICK AND JOSEPH FRICK VS. BIG LOTS STORES, INC.

72.     Paragraphs 1 through 71 are incorporated by reference as though more fully set forth at length herein.

73.     When BIG LOTS sold the subject torches and torch fuel to MR. FRICK on April 26, 2013, it misrepresented by conduct that those products were safe for use by PLAINTIFFS and other consumers as consumer goods for personal, family and household purposes, when, in fact, those products were not safe for such use. At the time of the sale of those products by BIG LOTS to MR. FRICK, BIG LOTS possessed explicit knowledge and acute awareness of the defective and unreasonably dangerous nature of the subject torches and torch fuel.

74.     These misrepresentations by conduct on the part of BIG LOTS involved essential material facts regarding the very safety of those products as consumer goods for personal, family and household purposes. PLAINTIFFS relied on the misrepresentation(s) by conduct of BIG LOTS in purchasing and using the subject torches and torch fuel.

75.     PLAINTIFFS have suffered severe, continuing and permanent personal injuries and significant past and continuing financial expenses as a result of their detrimental reliance on the misrepresentations by conduct of BIG LOTS. Specifically, PLAINTIFF, DIANA FRICK sustained the severe, continuing and permanent burn injuries as set forth in paragraphs 62 and 63 of this Complaint, *supra*. Further, JOSEPH FRICK has sustained the injuries and damages set forth in paragraphs 64 and 65.

WHEREFORE, based upon the foregoing, PLAINTIFF, DIANA FRICK, claims damages against Defendant, BIG LOTS, for a sum in excess of $35,000.00 plus punitive damages, interest and costs of suit. Further, PLAINTIFF, JOSEPH FRICK, claims

damages against Defendant, BIG LOTS, for a sum in excess of $35,000.00 plus punitive damages, interest and costs of suit.

**JURY TRIAL DEMANDED**

## COUNT IV -

## STRICT PRODUCTS LIABILITY – INADEQUATE WARNINGS
## DIANA FRICK AND JOSEPH FRICK VS. BIG LOTS STORES, INC.

76.    Paragraphs 1 through 75 are incorporated by reference as though more fully set forth at length herein.

77.    At the time of the sale of the subject torches and torch fuel to Mr. FRICK on April 26, 2013, and continuing through and until the explosion on May 19, 2013, the labelings and warnings set forth on those products were inadequate and defective as set forth in this complaint, *supra*.  Further, at the time of sale to MR. FRICK on April 26, 2013, BIG LOTS possessed explicit knowledge and acute awareness of the defective and unreasonably dangerous nature of the subject torches and torch fuel including the design defects and the inadequate labeling and warning defects as set forth in this Complaint *supra*.

78.    At the time of the purchase of the subject torches and torch fuel by MR. FRICK on April 26, 2013, and the subsequent use of those products by MRS. FRICK on May 19, 2013, the design defects and labeling and warning defects were neither known nor knowable to PLAINTIFFS, other purchasers of the subject products and members of the general public.

79.     As a direct and proximate result of the inadequate labeling and warnings set forth on the subject torches and torch fuel, DIANA FRICK sustained the severe, continuing and permanent burn injuries as set forth in paragraphs 62 and 63 of the Complaint, *supra*, and JOSEPH FRICK sustained the severe burn injuries as set forth in Paragraphs 64 and 65 of the Complaint, *supra*.

WHEREFORE, based upon the foregoing, PLAINTIFF, DIANA FRICK, claims damages against Defendant, BIG LOTS, for a sum in excess of $35,000.00 plus punitive damages, interest and costs of suit. Further, PLAINTIFF, JOSEPH FRICK, claims damages against Defendant, BIG LOTS, for a sum in excess of $35,000.00 plus punitive damages, interest and costs of suit.

**JURY TRIAL DEMANDED**

## COUNT V

## BREACH OF WARRANTIES

### DIANA FRICK AND JOSEPH FRICK VS. BIG LOTS STORES, INC.

80.     Paragraphs 1 through 79 are incorporated by reference as though more fully set forth at length herein.

81.     By participating in the design of, and also being the marketer, distributor and seller of the subject torches and torch fuel to MR. FRICK on April 26, 2013, BIG LOTS expressly and impliedly warranted that those products were merchantable, fit and safe for the ordinary and particular purposes for which it was sold as a consumer product for personal household or family purposes and that it was free from all defects.

82.     BIG LOTS is a "merchant" with respect to the subject torches and torch fuel as that term is defined by Pennsylvania law, 13 Pa. C.S.A §2314.

83.     BIG LOTS breached these expressed and implied warranties by participating in the design of subject torches and in the marketing, distributing and selling the subject torches and torch fuel in an unmerchantable, unfit and unsafe condition.

84.     As a direct and proximate result of the breach of warranties of BIG LOTS, PLAINTIFF, DIANA FRICK, as a third party beneficiary of those warranties, sustained the severe, continuing and permanent burn injuries and damages as set forth in paragraphs 62 and 63 of this Complaint, *supra* and JOSEPH FRICK sustained the severe burn injuries and damages as set forth in Paragraphs 64 and 65 of the Complaint, *supra*.

WHEREFORE, based upon the foregoing, PLAINTIFF, DIANA FRICK, claims damages against Defendant, BIG LOTS, for a sum in excess of $35,000.00 plus punitive damages, interest and costs of suit.  Further, PLAINTIFF, JOSEPH FRICK, claims damages against Defendant, BIG LOTS, for a sum in excess of $35,000.00 plus punitive damages, interest and costs of suit.

**JURY TRIAL DEMANDED**

## COUNT- VI

## VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (UTPCPL)

### DIANA FRICK AND JOSEPH FRICK VS. BIG LOTS STORES, INC.

85.     Paragraphs 1 through 84 are incorporated by reference as though more fully set forth at length herein.

86.     The subject torches and torch fuel were sold by BIG LOTS as consumer goods primarily for personal, family or household purposes.  Consequently, the

32

Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1-201-9.3 (hereinafter referred to as "UTPCPL" ) applies to the sale of the subject torches and torch fuel by BIG LOTS to MR. FRICK on April 26, 2013. MRS. FRICK is also a direct and/or third party beneficiary and/or a protected individual and/or a purchaser under the UTPCPL.

87.    BIG LOTS violated the Pennsylvania UTPCPL by selling the subject torches and torch fuel to MR. FRICK given the design defects and inadequate warning and labeling as set forth in this Complaint, *supra*. Specifically, the act of selling those products to MR. FRICK with the defective conditions as aforesaid, known to BIG LOTS at time of sale to MR. FRICK, constituted a representation by action on the part of BIG LOTS that the subject torches and torch fuel were safe for use by PLAINTIFFS and other customers as consumer goods for personal, family and household purposes, when, in fact, those products were not safe for such use.

88.    The representations by action on the part of BIG LOTS in selling a known defective products to MR. FRICK on April 23, 2013, represented an unfair or deceptive act(s) or practice(s) under §201-2(4) of the UTPCPL.

89.    Consequently, BIG LOTS has violated the UTPCPL generally and in the following particulars when it sold the subject torches and torch fuel to MR. FRICK:

a.    Violation of 73 Pa C.S.§201-2 (4)(v) in that BIG LOTS represented by the act of marketing, distributing and selling the subject torches and torch fuel that those products possessed the characteristics and/or ingredients and/or uses and/or benefits

33

and/or qualities of consumer products safe for personal, family, or household purposes when they were not;

      b.     Violation of 73 Pa C.S.§201-2 (4)(vii) in that BIG LOTS represented by the act of marketing, distributing and selling those products that they were of a particular standard or quality as consumer products safe for personal, family or household purposes when they were not;

      c.     Violation of 73 Pa C.S.§201-2 (4)(xxi) in that BIG LOTS engaged in deceptive conduct which created a likelihood of confusion or misunderstanding in PLAINTIFFS other customers by selling the subject torches and torch fuel as consumer products safe for personal, family or household purposes when they were not.

90.     PLAINTIFFS detrimentally relied on BIG LOTS representations that the subject torches and torch fuel were consumer products safe for personal, family or household purposes when MR. FRICK purchased those products on April 26, 2013, and on May 19, 2013, when PLAINTIFFS used the subject torches.

91.     PLAINTIFFS have and suffered severe, continuing and permanent personal injuries and significant and continuing financial expenses as a result of their detrimental reliance on the deceptive acts and practices of BIG LOTS. Specifically, PLAINTIFFS have sustained the following ascertainable loss of money and property, which include, *inter alia*, the following:

      a.     General monetary damages under Pennsylvania law for the severe, continuing and permanent burn injuries as set forth in this Complaint, *supra*;

b.     Specific monetary damages for surgical and medical attention, hospitalization, medical supplies, surgical appliances, medicines, rehabilitative and attendant services in the past and continuing into the future, now calculated to exceed $200,000.00;

c.     Specific monetary damages for the loss of personal property as a result of the explosion of the subject torches and torch fuel.

92.     Pursuant to §201-9.2 of the UTPCPL, PLAINTIFFS, are entitled to bring a private action to recover their actual damages and that amount may be trebled at the discretion of the Court. Further, in addition to the other relief provided by the UTPCPL, the court may award PLAINTIFFS costs and reasonable attorney's fees.

WHEREFORE, based upon the foregoing, PLAINTIFFS, DIANA FRICK AND JOSEPH FRICK, claim actual damages against Defendant, BIG LOTS, pursuant to the UTPCPL in an amount to be determined by the Court on the evidence, plus treble damages of any such amount determined by the Court and also attorney's fees and costs at the Court's discretion.

## COUNT- VII

## NEGLIGENCE

## DIANA FRICK AND JOSEPH FRICK VS. BIG LOTS STORES, INC.

93.     Paragraphs 1 through 92 are incorporated by reference as though more fully set forth at length herein.

94.     BIG LOTS owed a duty of reasonable care in participating in the design of, and in the marketing, testing, labeling, warning, distributing and selling of the subject torches and torch fuel before those products were released into the stream of commerce and purchased by MR. FRICK.

95.     Further, BIG LOTS owed a duty of reasonable care to PLAINTIFFS, other customers and members of the general public to keep all purchasers and users of the subject torches and torch fuel safe and to prevent injuries such as occurred to PLAINTIFFS when those products are properly used for their intended purposes.

96.     BIG LOTS negligently breached its duties to PLAINTIFFS in general and in the following particulars:

a.     Failure to use ordinary care in participating in the design of and the marketing, testing, labeling, distributing and selling of the subject torches and torch fuel and in placing those products into the stream of commerce.

b.     Participating in the design of and marketing, labeling, distributing and selling the subject torches that were defectively designed by failing to provide, *inter alia*, a fitted tubular wick holder, an extinguishing cap and appropriate and sufficient venting with the subject torches;

c.     Negligently misrepresenting and concealing the risks and dangers associated with the use of the subject torches both with and without the torch fuel, the misrepresentation and absence of which PLAINTIFFS reasonably relied upon to their detriment;

36

d.     The failure to include with the subject torches and torch fuel adequate and proper labeling and warnings regarding the significant dangers and risks thereof including, *inter alia*, failing to include a proper warning regarding the significant dangers and risks of extinguishing the subject torches by blowing on the wick, and also failing to warn about the significant danger of using the torch fuel with the subject torch;

e.     By displaying, marketing and selling the subject torches with the torch fuel when the subject torch fuel had a flashpoint significantly lower than 140°F;

f.     Failing to properly test and inspect the subject torches including, *inter alia*, failing to test the subject torches with the torch fuel prior to releasing them into the stream of commerce;

g.     Labeling the subject torches with deceptive, confusing and contradictory wording by stating that the subject torches were to be used with "citronella oil" only, but also stating, and clearly implying, that "torch fuel" could also be used in the body of the subject torches[5];

h.     Failure to remove and/or recall the subject torches and torch fuel from the market when they knew, or should have known through the exercise of reasonable diligence, of the defective design, marketing, testing, labeling, distributing and/or selling of those products before MR. FRICK purchased those products on April 26, 2013;

37

i.    Continuing to market, sell and place into the stream of commerce the subject torches and torch fuel when BIG LOTS knew, or should have known through the exercise of reasonable diligence, of the likelihood of serious injuries to its customers and users and before MR. FRICK purchased those products on April 26, 2013 ;

j.    In willfully, wantonly and recklessly continuing to market, sell and place into the stream of commerce the subject torches and torch fuel when BIG LOTS possessed explicit knowledge and acute awareness of the occurrence of prior serious burn injuries and property damage when customers used those products before MR. FRICK purchased those products of April 26, 2013;

k.    In failing to warn PLAINTIFFS and other purchasers of the defective and unreasonably dangerous nature of the subject torches and torch fuel after BIG LOTS placed those products in to the stream of commerce sometime in early 2013 but before MR. FRICK purchased those products on April 26, 2013;

l.    In willfully, wantonly and recklessly failing to take any action to warn PLAINTIFFS of the defective and unreasonably dangerous nature of the subject torches and torch fuel after BIG LOTS placed those products in to the stream of commerce sometime in early 2013 but before MR. FRICK

---

[5] See Paragraph 18 and footnote 1 for more thorough explanation of the deception, confusion and contradictory nature of the labeling.

purchased those products on April 26, 2013, in spite of BIG LOTS explicit
knowledge and acute awareness of the defect(s) and danger(s);

m.     In failing to warn PLAINTIFFS and other purchasers of the
defective and unreasonably dangerous nature of the subject torches and
torch fuel after MR. FRICK purchased those products on April 26, 2013, but
before PLAINTIFFS' explosion and burn injuries of May 19, 2013;

n.     In willfully, wantonly and recklessly failing to take any action to
protect and/or warn and/or notify PLAINTIFFS of the defective and
unreasonably dangerous nature of the subject torches and torch fuel after
MR. FRICK purchased of those products on April 26, 2013 but before
PLAINTIFFS' burn injuries explosion of May 19, 2013, in spite of BIG LOTS
explicit knowledge and acute awareness of the defect(s) and danger(s) and
also in spite of BIG LOTS capability to easily, conveniently, logically,
efficiently, inexpensively and timely contact PLAINTIFFS before any harm
occurred;

o.     In failing to recall the subject torches and torch fuel in a timely
manner after the purchase of those products by MR. FRICK on April 26,
2013 and before PLAINTIFFS' burn injuries on May 19, 2013;

p.     In willfully, wantonly, and recklessly failing to recall the table
top torches in a timely manner after the purchase of those products on April
26, 2013 and before PLAINTIFFS' burn injuries on May 19, 2013, when BIG
LOTS possessed explicit knowledge and acute awareness of the defective

39

and unreasonably dangerous nature of those products and in spite of BIG LOTS' capability to easily, conveniently, logically, efficiently, inexpensively and timely contact PLAINTIFFS before any harm occurred;

q. In failing to use the due care and caution required under the circumstances.

97. As a direct and proximate result of the negligence of BIG LOTS as aforesaid, DIANA FRICK sustained the severe, continuing and permanent burn injuries and damages as set forth in paragraphs 62 and 63 of this Complaint, *supra*. Further, JOSEPH FRICK has sustained the injuries and damages set forth in paragraphs 64 and 65 of this Complaint, *supra*.

WHEREFORE, based upon the foregoing, PLAINTIFF, DIANA FRICK, claims damages against Defendant, BIG LOTS, for a sum in excess of $35,000.00 plus punitive damages, interest and costs of suit. Further, PLAINTIFF, JOSEPH FRICK, claims damages against Defendant, BIG LOTS, for a sum in excess of $35,000.00 plus punitive damages, interest and costs of suit.

**JURY TRIAL DEMANDED**

**COUNT- VIII**

**LOSS OF CONSORTIUM**

**JOSEPH FRICK VS. BIG LOTS STORES, INCE**

98. Paragraphs 1 through 97 are incorporated by reference as though more fully set forth at length herein.

99. As a direct and proximate result of the aforesaid culpability of BIG LOTS as asset forth in this Complaint, *supra*, JOSEPH FRICK has suffered and/or will suffer the following injuries and damages:

    (a)    Loss of surety;

    (b)    Loss of companionship; and

    (c)    Loss of consortium.

WHEREFORE, based upon the foregoing, PLAINTIFF, JOSEPH FRICK, claims damages against Defendant, BIG LOTS, for a sum in excess of $35,000.00 plus punitive damages, interest and costs of suit.

**JURY TRIAL DEMANDED**

Respectfully Submitted,

LAW OFFICE OF MICHAEL C. GEORGE

Michael C. George

**VERIFICATION**

We, Diana Frick and Joseph Frick, verify that the statements made in this Complaint are true and correct to the best of our knowledge, information and belief. We understand that knowingly false statements herein are made subject to the penalties of 18 Pa.C.S. 4904 relating to unsworn falsifications to authorities.

_Diana Frick_
Diana Frick

Joseph Frick

**CERTIFICATE OF SERVICE**

I, Michael C. George, Esquire, hereby certify that a true and correct copy of the within pleading has been served upon counsel of record by:

|  |  |
|---|---|
| _____ | Hand Delivery |
| ✓_____ | First Class Mail, Postage Prepaid |
| ✓_____ | Certified Mail, Return Receipt Requested |
| _____ | Fax Transmission |

at the following addresses and/or numbers:

Big Lots Stores, Inc.
300 Phillipi Road
Columbus, Ohio 43228-5311

By _____
Michael C. George, Esquire
Attorney for Plaintiff

Date: 3-3-15